FILED

2017 NOV 30 P 12: 13

US DISTRICT COURT
BRIDGEPORT CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JACQUELINE JOHNSON

          Plaintiff,

-against-

JP MORGAN CHASE,
Kevin Watters - CEO Mortgage
Jamie Dimon - CEO
          Defendant.

Case No.

3:17 cv 1995 (VLB)

JURY TRIAL REQUESTED

Plaintiff Jacqueline Johnson hereby file this action against JP Morgan Chase (hereinafter "JPMC") "~~UPS~~" or "Defendant"), and allege the following:

## THE PARTIES

1. Jacqueline Johnson is a resident of the State of Connecticut, where she has resided since approximately 1980.

2. JPMC is a banking corporation, duly organized and existing by virtue of the laws of the State of New York with a principal place of business located in New York, New York, with offices providing financial services throughout the State of Connecticut.

3. Upon information and belief, JPMC knowingly and intentionally participated in the infringement alleged in this Complaint.

4. As set forth herein, JPMC has engaged in a pattern of deceptive behavior involving, but not limited to, intentionally confusing and lying to Plaintiff and imposing onerous penalties with a total disregard for fair dealing and good faith.

## JURISDICTION AND VENUE

5. This action arises under the Acts of Congress relating to deceit, confusion, fraud.

6. The Court has subject matter jurisdiction for this action, since the amount in controversy exceeds $75,000, exclusive of interest and cost. The parties are diverse.

7. The Court has supplemental jurisdiction over plaintiff's claims arising under state law, because the state law claims arise from the same case and controversy and derive from a common nucleus of operative fact.

8. Venue is proper under 28 U.S.C. 1391.

9. This action arose out of the of a business transaction, specifically the mortgage modification process for Loan Number Ending in 3062, on or about 2010, after JPMC was a recipient of said account, subsequent to the contested and litigious acquisition of Washington Mutual Bank ("WAMU") on or about 2008.

## BACKGROUND

10. Jacqueline Johnson and Winston Johnson ("Johnsons") are senior citizens and long-term residents of Stamford, CT., since about 1980.

11. The Johnsons have held leadership positions, primarily in marketing, publishing, financial and internet (website development) business positions. Jacqueline Johnson has held management positions as Marketing/Travel Advertising Directors for New York and Conde Nast Bridal Magazines. She currently heads up the Global Bridal Group including MarryCaribbean.com, which are internet-based companies. She is also an avid speaker and writer in the travel industry.

12. Winston Johnson rose to the position of VP, Group Publishing Director at CBS, with stewardship over the Consumer Electronics Magazines. He also served on several Boards of Directors, ascending to the Chairmanship of the Board for the Martin Luther King Inc.

## RECAPITULATION OF CHASE, MORTGAGE # 703333062

13. In September 2005, the Johnsons purchased property known as and located at 157 Jonathan Drive, Stamford, CT, having secured a loan secured by a mortgage initially held by Washington Mutual ("WAMU"). This mortgage was acquired by JPMC on or about September 26, 2008.

14. In early 2010, the Johnsons sought a mortgage modification at Chase to take advantage of lower interest rates.

15. During the process for acquiring a modification of the JPMC mortgage, JPMC engaged in deceitful, confusing, reckless and fraudulent behavior that caused and continues to cause plaintiffs significant and irreparable financial and emotional injury. Furthermore, these actions postpone or deny Plaintiff the "rights and privilege" of effective home ownership.

16. JPMC claimed seventeen home inspections, only to correct that falsehood after plaintiffs repeatedly questioned the accuracy of that assertion. When it was clear and proven beyond a doubt that said inspections were lies and never happened, JPMC changed its "story." See Exhibit #1.

17. JPMC's services or lack thereof are likely to confuse, mislead and deceive plaintiffs in the commerce of seeking a mortgage modification. Furthermore, the contract breach, whether intentional or not, had substantial aggravating circumstances that caused irreversible liability, resulting in unfair trade practices by Defendants, in terms of the following.

18. Based upon information and documentation, plaintiff had to speak with or interact with twenty-four (24) JPMC representatives during the mortgage modification process, with varying, conflicting or often contradictory information. In recent conversation, on or about May 2017, JPMC adamantly stonewalled and challenged the accuracy of these conversations and number of JPMC representatives during the modification process.

19. JPMC used a confusing "Verbal Mortgage Process" ("VMP") to initiate the so-called "Trial Mortgage," for Plaintiff. On or about the period from June 24, 2010 to July 23, 2010, JPMC sent three iterations of the Trial Mortgage, with one cancelling the other and subjected Plaintiff to foreclosure, even before the trial process began.

20. The Trial Mortgage documents did not have the specific amount for payment and Plaintiff had to call JPMC to verify said amount. After first payment was made on the Trial Plan, JPMC's bank system refused to accept second payment, a precursor to foreclosure proceedings and irreversible financial hardship imposed on Plaintiff.

21. Whether by neglect, incompetence or intentional disregard for plaintiff's most prized sanctuary, JPMC's behavior has resulted in irreparable harm and financial jeopardy. JPMC has since ceased using the VPM program but adamantly refused to provide explanation on why it was terminated. Nonetheless, plaintiffs have and continue to have financial and emotional harm from the confusion in the VPM that triggered a needless foreclosure and commensurate penalties to Plaintiff.

22. On or about October 21, 2010, to JPMC representative Jeffrey Zahorujko confirmed that there was nothing in plaintiff's files to recommend foreclosure and further advised plaintiffs to resubmit documents for modification. JPMC has shown bad faith and we fervently believe they are now trying to make a case with "phantom" documents.

23. JPMC created chaos and almost an impossible gauntlet to submit records for the modification process, in what could be construed as an attempt to disqualify Plaintiff for mortgage modification and therefore subject them to foreclosures. To these ends, plaintiffs submitted all documents in order by fax (even from JPMC's own facilities); mailed to Defendants, only to hear later that a page or two was missing and the process had to be repeated – over and over again.

24. Upon information and belief, an "insider" at JPMC informed plaintiffs that the JPMC incentivized employees in foreclosures during the period of plaintiffs' modification process.

25. After modification was finally approved on or about 2013, plaintiffs' mortgage was increased to approximately $900,000 versus less than $800,000, a decade earlier with Washington Mutual, before JPMC took stewardship of the account.

26. During this period, plaintiff paid significant mortgage payments and have never been late on one single mortgage since modification was approved.

27. Just prior to approval, JPMC pushed plaintiff to sign and submit documents quickly to insure modification approval. This was a clear attempt by JPMC to enforce duress into signing, during a period of frustration, indecision and severe anxiety.

28. Upon information and belief, JPMC was deceitful and tried to hide the penalties during the period of contrived foreclosure by knowingly using two systems ("two books") to report the outstanding mortgage of Plaintiff.

29. JPMC has maliciously and intentionally inflicted emotional pain, suffering and distress over a two year period with their deceit and the gauntlet to delay and process the mortgage modification, with a clear intent to trigger a foreclosure. Defendant allegedly provided incentives for mortgage foreclosures. Plaintiff has documented pain and suffering over and over, due to the contrived obstacles and premeditated uncertainty on the home status, despite following all instructions from JPMC on filing a mortgage modification.

### COUNT 1

30. JPMC is guilty of violating the Connecticut Unfair Trade Practices Act and its federal analogues.

31. Upon information and belief, JPMC knowingly misrepresented the number of inspections it performed on the subject premises with respect to mortgage modification ending in 3062. Specifically, defendant claimed seventeen home inspections, only to correct that falsehood after Plaintiff repeatedly questioned its accuracy. When it was clear and proven beyond a doubt that said inspections were lies and never happened, Defendant changed their "story."

32. Defendants conduct was intended to deceive plaintiff.

33. Defendants conduct had the actual effect of deceiving plaintiff.

34. As a result of defendant's foregoing conduct, plaintiff has been damaged in an amount to be determined by the court.

35. Defendants' services or lack thereof are likely to confuse, mislead and deceive Plaintiff in the commerce of seeking a mortgage modification.

36. Furthermore, the contract breach whether intentional or not had substantial aggravating circumstances that caused irreversible liability, resulting in unfair trade practices by JPMC.

37. Plaintiffs have suffered emotional and physical pain and suffering.

## COUNT 2

38. JPMC is in breach of contract.

### DAMAGES

**WHEREFORE,** Plaintiff prays judgement in its favor with the following relief:

A.) A Court Order directing JPMC to reverse all the fees and expenses incurred during the mortgage modification process, the contrived foreclosure process and make good on all payments made and applied retroactively to the approximately $800,000 Washington Mutual balance on or about 2010.

B.) A Court Order granting plaintiff a reasonable amount for the pain and suffering through the deceitful period of fraudulent uncertainty imposed by Defendants on fate of home. Defendants' reckless, fraudulent and callous actions continue to inflict pain and suffering on Plaintiff and her family, to this very day.

C.) A Court Order that JPMC pays plaintiff its reasonable Attorneys' fees and costs under U.S.C. 1117(a) and (b).

D.) A Court Order granting plaintiff pre- and post-judgement interest for any money damages awarded to plaintiffs.

E.) A Court Order granting plaintiff such other and further relief as deemed just and equitable.

DATE: November 30, 2017

Respectfully submitted,

By: *[signature]*
Jacqueline Johnson.
157 Jonathan Drive
Stamford, Connecticut 06903.
(Tel) +1-203-461-8423/203-253-9288