AMMENDED
FILED

2018 MAY 21  P 12: 29

US DISTRICT COURT
BRIDGEPORT CT

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JACQUELINE JOHNSON<br><br>                                 Plaintiffs,<br><br>-against-<br><br>JP MORGAN CHASE,<br><br>                                 Defendant. | Case No. 3:17-cv-01995-VLB<br><br>JURY TRIAL REQUESTED |

Plaintiff Jacqueline Johnson hereby files this action against JP Morgan Chase (hereinafter "JMPC" or "Defendant"), and allege the following:

### THE PARTIES

1. Jacqueline Johnson is a resident of the State of Connecticut, where she has resided since approximately 1980.

2. JPMC is a banking corporation, duly organized and existing by virtue of the laws of the State of New York with a principal place of business located in New York, New York, with offices providing financial services throughout the State of Connecticut.

3. Upon information and belief, JPMC knowingly and intentionally participated in the infringement alleged in this Complaint.

4. As set forth herein, JPMC has engaged in a pattern of deceptive behavior involving, but not limited to, intentionally confusing and lying to Plaintiffs and imposing onerous penalties with a total disregard for fair dealing and good faith.

### JURISDICTION AND VENUE

5. This action arises under the Acts of Congress relating to deceit, confusion and fraud.

6. The Court has subject matter jurisdiction for this action, since the amount in controversy exceeds $75,000, exclusive of interest and cost. The parties are diverse.

7. The Court has supplemental jurisdiction over plaintiff's claims arising under state law, because the state law claims arise from the same case and controversy and derive from a common nucleus of operative fact.

8. Venue is proper under 28 U.S.C. 1391.

9. This action arose out of the of a business transaction, specifically the mortgage modification process for Loan Number Ending in 3062, on or about 2010, after JPMC was a recipient of said account, subsequent to the contested and litigious acquisition of Washington Mutual Bank ("WAMU") on or about 2008.

## BACKGROUND

10. Jacqueline Johnson and Winston Johnson ("Johnsons") are senior citizens and long-term residents of Stamford, CT., since about 1980.

11. **The Johnsons have held leadership positions, primarily in marketing, publishing, financial and internet (website development) business positions. Jacqueline Johnson has held management positions as Marketing/Executive Travel Advertising Director/VP Associate Publisher for New York and Conde Nast Bridal Magazines. She currently heads up Global Bridal Group including MarryCaribbean.com, which are internet-based companies. She is also a frequent speaker and writer in the travel industry in addition to being a philanthropist.**

12. Winston Johnson rose to the position of VP, Group Publishing Director at CBS, with stewardship over the Consumer Electronics Magazines. He also served on several Boards of Directors, ascending to the Chairmanship of the Board for the Martin Luther King Inc.

## RECAPITULATION OF CHASE, MORTGAGE # 703333062

13. In September 2005, the Johnsons purchased property known as and located at 157 Jonathan Drive, Stamford, CT, having secured a loan secured by a mortgage initially held by Washington Mutual ("WAMU"). This mortgage was acquired by JPMC on or about September 26, 2008.

14. In early 2010, the Johnsons sought a mortgage modification at Chase to take advantage of lower interest rates.

15. During the process for acquiring a modification of the JPMC mortgage, JPMC engaged in deceitful, confusing, reckless and fraudulent behavior that caused and continues to cause plaintiffs significant and irreparable financial and emotional injury. Furthermore, these actions postpone or deny Plaintiff the "rights and privilege" of effective home ownership.

16. JPMC claimed seventeen home inspections, only to correct that falsehood after plaintiffs repeatedly questioned the accuracy of that assertion. When it was clear and proven beyond a doubt that said inspections were lies and never happened, JPMC changed its "story."

17. JPMC's services or lack thereof are likely to confuse, mislead and deceive plaintiffs in the commerce of seeking a mortgage modification. Furthermore, the contract breach, whether intentional or not, had substantial aggravating circumstances that caused irreversible liability, resulting in unfair trade practices by Defendants, in terms of the following.

18. Based upon information and documentation, plaintiffs had to speak with or interact with a minimum of twenty-four (24) JPMC representatives during the mortgage modification process, with varying, conflicting or often contradictory information. In recent conversation, on or about May 2017, JPMC adamantly stonewalled and challenged the accuracy of these conversations and number of JPMC representatives during the modification process.

19. JPMC used a confusing "Verbal Mortgage Process" ("VMP") to initiate the so-called "Trial Mortgage," for Plaintiff. On or about the period from June 24, 2010 to July 23, 2010, JPMC sent three iterations of the Trial Mortgage, with one cancelling the other and subjected Plaintiff to foreclosure, even before the trial process began.

20. The Trial Mortgage documents did not have the specific amount for payment and Plaintiff had to call JPMC to verify said amount. After first payment was made on the Trial Plan, JPMC's bank system refused to accept the second payment, a precursor to foreclosure proceedings and irreversible financial hardship imposed on Plaintiff.

21. Whether by neglect, incompetence or intentional disregard for plaintiff's most prized sanctuary, JPMC's behavior has resulted in irreparable harm and financial jeopardy. JPMC has since ceased using the VPM program but adamantly refused to provide explanation on why it was terminated. Nonetheless, plaintiffs have and continue to have financial and emotional harm from the confusion in the VPM that triggered a needless foreclosure and commensurate penalties to Plaintiff.

22. On or about October 21, 2010, to JPMC representative Jeffrey Zahorujko confirmed that there was nothing in plaintiff's files to recommend foreclosure and further advised plaintiffs to resubmit documents for modification. JPMC has shown bad faith and we fervently believe they are now trying to make a case with "phantom" documents.

23. JPMC created chaos and almost an impossible gauntlet to submit records for the modification process, in what could be construed as an attempt to disqualify Plaintiff for mortgage modification and therefore subject them to foreclosures. To these ends, plaintiffs submitted all documents in order by fax (even from JPMC's own facilities); mailed to Defendants, only to hear later that a page or two was missing and the process had to be repeated – over and over again. **A full two years of monthly/bi-monthly submission to JPMC and said documents always have a page or two missing.**

24. Upon information and belief, an "insider" at JPMC informed plaintiffs that the JPMC incentivized employees in foreclosures during the period of plaintiff's modification process. Upon further information and belief, "incentivized foreclosures" resulted in a disproportionately higher number of foreclosures by JPMC and herewith request through discovery, a tally of foreclosures by JPMC, during the period of our modification process.

25. After the modification was finally approved on or about 2013, plaintiff's mortgage was increased to approximately $900,000 versus less than $800,000, a decade earlier with Washington Mutual, before JPMC took stewardship of the account.

26. It is noteworthy that Plaintiff has made every payment and further has never been late on any mortgage payment since modification was approved.

27. Just prior to approval, JPMC pushed plaintiffs to sign and submit documents quickly to insure modification approval. This was a clear attempt by JPMC to enforce duress into signing, during a period of frustration, indecision and severe anxiety.

28. Upon information and belief, JPMC was deceitful and tried to hide the penalties during the period of contrived foreclosure by knowingly using two systems ("two books") to report the outstanding mortgage of Plaintiff.

29. **JPMC's intentional deceit and lack of transparency continues until today. After this lawsuit was formally filed, the payment statement from JPMC for June 1, 2018 was promptly changed to include an additive "Deferred Principal Balance" of $112,836.66 that was never included on any previous monthly statement (s). Additionally, there was almost an unreadable fine print stating that the Unpaid Principal Balance of $753,447.02 "is not a payoff quote." The previous statements reflect a comparable Unpaid Principal Balance but there was never any Deferred Balance on the statement or any suggestion that this was not the official payoff quote.**

30. **JPMC has maliciously and intentionally inflicted emotional pain, suffering and distress over the past two-year period with their deceit and the gauntlet to delay and process the mortgage modification, with a clear intent to trigger a foreclosure. Defendant allegedly provided incentives for mortgage foreclosures. Plaintiff has documented pain and suffering over and over, due to the contrived obstacles and premeditated uncertainty on the home status, despite following all instructions from JPMC on filing a mortgage modification.**

### COUNT 1

31. JPMC is guilty of violating the Connecticut Unfair Trade Practices Act and its federal analogues.

32. Upon information and belief, JPMC knowingly misrepresented the number of inspections it performed on the subject premises with respect to mortgage modification ending in 3062. Specifically, defendant claimed seventeen home inspections, only to correct that falsehood after Plaintiff repeatedly questioned its accuracy. When it was clear and proven beyond a doubt that said inspections were lies and never happened, Defendant changed their "story."

33. Defendants conduct was intended to confuse plaintiff.

34. Defendants conduct had the actual effect of deceiving plaintiffs

35. As a result of defendant's foregoing conduct, plaintiffs have been damaged in an amount to be determined by the court.

36. Defendants' services or lack thereof are likely to confuse, mislead and deceive Plaintiff in the commerce of seeking a mortgage modification. Furthermore, the contract breach whether intentional or not had substantial aggravating circumstances that caused irreversible liability, resulting in unfair trade practices by JPMC.

37. Plaintiffs have suffered emotional and physical pain and suffering.

38. **Upon information and belief, we also believe our case was not isolated and request the court to demand foreclosure documents to verify if the fraudulent mortgage modification process by Defendants to trigger foreclosures was widespread that JPMC breached the RICO statutes.**

    **COUNT 2**

39. JPMC is in breach of contract.

    **DAMAGES**

    **WHEREFORE,** Plaintiff prays judgment in its favor with the following relief:

A.) A Court Order directing JPMC to reverse all fees/penalties assessed on said mortgage during and after the mortgage modification process, that caused the contrived foreclosure process.

B.) A Court Order granting plaintiffs a reasonable amount for the pain and suffering through the deceitful period of fraudulent uncertainty imposed by Defendants on fate of home. Defendants' reckless, fraudulent and callous actions continue to inflict pain and suffering on Plaintiff and her family, to this day.

C.) A Court Order that JPMC pays plaintiffs its reasonable Attorneys' fees and costs under U.S.C. 1117(a) and (b).

D.) A Court Order granting plaintiff's pre- and post-judgment interest for any money damages awarded to plaintiffs.

E.) A Court Order granting plaintiffs such other and further relief as deemed just and equitable.

DATE: May 21, 2018                                        Respectfully Submitted,

                                                          By: _____
                                                          Jacqueline Johnson

                                                          157 Jonathan Drive
                                                          Stamford, Connecticut 06903
                                                          Mobile: 203-461-8423



## Account Details

**MORTGAGE LOAN (...3062)**

*Print*   What can we do better? WE'RE LISTENING

### Payment Information

| | |
|---|---|
| Next payment due date | 05/01/2018 |
| Next payment amount due | $5,006.41 |

**Automatic payments**

**Important:** To avoid a $145.58 late fee, we must receive your payment no later than 15 days after it's due.

### Recent Payment Activity

| | |
|---|---|
| Date of last payment | 04/03/2018 |
| Amount of last payment | $5,006.41 |
| Principal balance | $754,472.34 |
| Escrow balance | $4,259.12 |

### YTD Account Summary

| | |
|---|---|
| Interest paid YTD | $6,307.96 |
| Principal paid YTD | $4,527.22 |
| Property tax paid YTD | $8,243.44 |

See transaction history

### Mortgage Summary

| | |
|---|---|
| Loan type | Adjustable Rate Loan |
| Interest rate | 3% |
| Next interest rate change date | 10/01/2035 |
| Next payment change date | 11/01/2035 |
| Last escrow analysis | 08/17/2017 |
| Monthly payments made | 150 of 360 |
| Loan origination date | 09/28/2005 |
| Original loan amount | $798,750.00 |
| Original appraisal amount | $1,150,000.00 |
| Original maturity date | 10/01/2035 |
| Property address | 157 JONATHAN DR STAMFORD, CT 06903 |

| | |
|---|---|
| Customer Service | 1-866-550-2232 |
| Includes 24/7 Automated Response | |
| Monday - Friday | 8 a.m. - 10 p.m. (ET) |
| Saturday | 8 a.m. - 8 p.m. (ET) |
| Sunday | 8 a.m. - 5 p.m. (ET) |
| Hearing Impaired Service (TTY) | 1-800-582-0542 |

00020 MWD Z 12318 C - BRE
JACQUELINE JOHNSON
157 JONATHAN DR
STAMFORD CT 06903-1508

## Mortgage Loan Statement

| | |
|---|---|
| Loan Number | 0703333062 |
| Statement Date | 05/03/2018 |
| Property Address | 157 Jonathan Dr |
| | Stamford, CT 06903 |
| **Total Amount Due** | **$5,006.41** |
| **Payment Due Date** | **06/01/2018** |

A late charge of $145.58 may apply if received after 06/16/2018.

### Explanation of Amount Due

| | |
|---|---|
| Principal | $1,027.88 |
| Interest | $1,883.62 |
| Escrow Payment (Taxes and/or Insurance) | $2,094.91 |
| **Monthly Payment** | **$5,006.41** |
| Prior Fees/Charges | $0.00 |
| Fees/Charges Since Last Statement | $0.00 |
| **Total Amount Due** | **$5,006.41** |

### Loan Overview (as of this month)

| | |
|---|---|
| Original Principal Balance | $798,750.00 |
| Unpaid Principal Balance | $753,447.02 |
| Deferred Principal Balance | $112,836.88 |
| Capitalized Interest Balance | $15,237.74 |
| Escrow Balance | $6,354.03 |

Your Unpaid Principal Balance is not a payoff quote. Learn more about the payoff process by visiting chase.com/Payoff or obtain a payoff quote by calling our 24/7 automated service at 1-877-505-2894.

### Past Payments Breakdown

| | Paid Since Last Statement | Paid Year-to-Date |
|---|---|---|
| Principal | $1,025.32 | $5,552.54 |
| Interest | $1,886.18 | $8,194.14 |
| Escrow Payment (Taxes and/or Insurance) | $2,094.91 | $10,474.55 |
| **Total** | **$5,006.41** | **$24,221.23** |

### Adjustable Rate Mortgage Information

| | |
|---|---|
| Interest Rate (Until 03/2019) | 3.00000% |
| For Payment Due | 06/01/2018 |

### Transaction Activity Since Your Last Statement (Includes Fees/Charges)

| Transaction Date | Description | Total Received | Principal | Interest | Escrow | Fees | Unapplied Funds |
|---|---|---|---|---|---|---|---|
| 05/03/2018 | PAYMENT | $5,006.41 | $1,025.32 | $1,886.18 | $2,094.91 | | |

### Important Messages

If you or any occupant of your home are or recently were on active Military duty or related active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA), state law, or Chase policy. These benefits and protections may include protection from foreclosure or eviction without a court order, and in some cases, interest rate and fee benefits. Some protections also may be available if you are the dependent of an eligible Servicemember. In addition, some state laws may allow Servicemembers to request a payment deferral.

For more information, please call Chase Military Services at 1-877-469-0110

The capitalized interest balance listed in the loan overview section of your statement is the amount of interest that has been included with your principal balance as part of a modification to your account. When the account was adjusted, the interest balance owed at that time was added to the unpaid principal to remove the delinquency. As you make payments reducing your unpaid principal balance, you are also reducing the capitalized interest balance. We report the full amount of interest paid on IRS Form 1098, including capitalized interest.


▼   Please detach and return the bottom portion of this statement with your payment using the enclosed envelope   ▼



From: Jacqueline Johnson [mailto:jjohnsonctc@aol.com]
Sent: Wednesday, May 02, 2018 1:29 PM
To: Rich, Brian D.
Subject: Blocked Mortgage account

A good morning and trust your day is a good one. I went online as usual to pay my mortgage. Without any notification or warning, JP Morgan Chase has unilaterally prevented me from making my mortgage payment online as I have been doing for many years.

CHASE ONLINE℠    Wednesday, May 02, 2018

**MORTGAGE LOAN (...3062)**

**Account Details**

**Account Details Unavailable**

**The details for this loan aren't available online.** Please call Customer Service at 1-800-848-9136 if you'd like more information about this account.

Spoke to 5 (yes "Five") representatives before one took a guess at the possibility of removal. Would very much appreciate if you could explain the reason for this. No one could access the account!

Is this another gambit from JPMorgan Chase to prevent me from my timely online payments without a recourse?

I am again totally confused by JP Morgan Chase's gambit to prevent me from making monthly mortgage payments. My husband will now have to go to a Chase bank to see if he can execute this transaction as I am not available to do so.

JP Morgan Chase has done so much to cause me harm and rob me of my home. It was only sheer faith, tenacity and divine intervention (at least I think so) that I was able to get my home out of the clutches of this financial institution.

This is reminiscent of exactly what transpired when I was not allowed to pay my mortgage for over two years, no matter how I tried.

Jacqueline Johnson

Jacqueline Johnson, CTC

JP Morgan Chase Removing my online mortgage information so that I am not allowed to pay on time.

Date: May 2, 2018

Spoke to five different customer service representatives trying to find out the reason for the removal or lack of access to pay online as I have done for years.

**Per instruction of Bank notice I should call – 1-877-242-7372**
1. First Representative Ms. Kayla Lane who could not access information.

2. Next up with Christian Technison? Who agreed that this was a strange occurrence and gave me another number to call.

3. 1-888-994-5626  Luvia Duran who switched me over to:

4. Nolan Steed.  Went through the verification process (pin number, etc) no access to account

5. Was told to call Steven Mueller :1-877-242-7372 who after going through all the verification still could not access the account for me to pay mortgage.  Finally after holding and his conversation with someone else, he started asking a few questions to see if any applied to me.  Finally he reached 'litigation' and I said yes..He then surmised (guessed) that must be the reason as he could also not access account.

Frustrated I wrote letter to Brian Rich - Lawyer representing Chase.  Awaiting answer.