UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JACQUELINE JOHNSON, | : | |
| Plaintiff, | : | No. 3:17-CV-1995 (VLB) |
| v. | : | |
| JPMORGAN CHASE BANK, N.A., | : | March 28, 2019 |
| Defendant. | : | |

## MEMORANDUM OF DECISION ON MOTION TO DISMISS [DKT. 35]

Plaintiff Jacqueline Johnson ("Plaintiff") commenced this action *pro se* against JPMorgan Chase Bank, N.A. ("Defendant") alleging that Defendant violated the Connecticut Unfair Trade Practices Act ("CUTPA"), breached its contract with Plaintiff and inflicted emotional distress upon her. Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint ("TAC") in its entirety. For the foregoing reasons, Defendant's Motion is GRANTED IN PART and DENIED IN PART.

I.  Background[1]

On October 3, 2005, Plaintiff purchased real property located at 157 Jonathan Drive, Stamford, CT. [Dkt. 34 (Compl.) at 1]. Plaintiff financed the purchase with Washington Mutual Bank with a mortgage in the amount of $798,750. *Id.* In

---

[1] The Court describes the facts as alleged in Plaintiff's TAC and the documents attached to it. *See, e.g., McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) ("[On a motion to dismiss,] our review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.").

September 2008, Defendant acquired Washington Mutual Bank, including Plaintiff's mortgage. *Id*. In early 2010, Plaintiff sought a mortgage modification to take advantage of lower interest rates. *Id.* Plaintiff and Defendant began a Verbal Mortgage Process, the prerequisite to entering into a Trial Mortgage. *Id*. at ¶ 16.

Plaintiff alleges that from June 24, 2010 to July 23, 2010 iterations of the Trial Mortgage cancelled each other out, subjected Plaintiff to foreclosure before the trial process began, and failed to specify the amount for payment. *Id.* at Exs. 8-10. On June 24, 2010 and July 23, 2010, Plaintiff received a letter from Defendant informing her that she had a Chase Modification Program Trial Plan Payment due July 1, 2010 (and August 1, 2010, respectively) as a condition of or approval for a permanent modification. *Id*. at Exs. 2-4. Neither letter included the amount of the mortgage payment due. Plaintiff further alleges "[t]he trial plan that was supposed to begin on July 1, 2010 was canceled before it started as per our conversation with Jennifer Rogers at Chase, on or about June 28, 2010. She said the [June 24, 2010] letter was sent out in error." *Id*. at Ex. 8. On July 23, 2010, Defendant wrote Plaintiff informing her "Your Chase Home Affordable Modification Program Trial Period Plan is at Risk" [. . . because] "as of the date of this letter we have not received the payment due on the first of July under your Chase Home Affordable Modification Program Trial Period Plan . . . and your eligibility for participation in this program is at risk." *Id*. at Ex. 3. The TAC does not allege a July mortgage payment was made.

Plaintiff alleges "[d]espite the late notice, on the advice of Ms. Regan at Chase, we sent in a check for $4,881.54 for the August 2010 payment on an

unspecified date." *Id.* at Exs. 8-10. The TAC does not allege a payment was made for September 2010. Plaintiff alleges "[a]nother fax transmission to Chase dated October 18, 2010 confirms that we also sent another check for the same amount [$4,881.54] by mail that Chase claims they did not receive." *Id.*

In response to Plaintiff's inquiry, she had a conversation with Defendant's representative Jeffrey Zahorujko. *Id.* at Ex. 16. On October 21, 2010, Plaintiff wrote a letter to Mr. Zahorujko memorializing their conversation in which she wrote "we returned from a conference in Barbados [on an unspecified date in October 2010] and went to pay the October mortgage." *Id.* The letter states "the bank would not accept the [October] payment, and [Plaintiff] called to find out why, only to be told that the house was in foreclosure." *Id.* In her letter, Plaintiff also states Mr. Zahorujko informed Plaintiff he "was also going to find out the name of the lawyer that is supposed to be [handling Plaintiff's foreclosure] and inform him/her that [mortgage modification] papers are going to be re-submitted*." Id*.

Plaintiff acknowledged that in October 2010 Defendant asked her "to refile the information that was previously sent requesting modification and provide some updated information, as the information previously submitted to qualify for the [modified mortgage] rate of 2.8% was dated," not missing. *Id.*

Plaintiff had to deal with Defendant's "contrived foreclosure" and fear of losing her home. *Id.* at ¶¶ 13-14. The modification process took approximately two years to complete. Plaintiff claims the process took so long because Defendant falsely claimed Plaintiff's modification application was missing documents and forced her to resubmit her application repeatedly. *Id.* at ¶¶ 24-25. Plaintiff further

3

claims Defendant intentionally created these delays. *Id*. Thus, the modification process was complete in 2013.[2] Plaintiff spoke with twenty-four different JPMorgan representatives during this time and was confused by the conflicting information they provided. *Id*. at ¶¶ 16, 23. Plaintiff suffered from undue stress at the thought of losing her home, emotional injury and sleepless nights. *Id.* at ¶¶ 12-13, 36.

After the mortgage modification was approved, Plaintiff learned that the payoff-mortgage costs and penalties would significantly exceed the initial mortgage with Washington Mutual. *Id.* at ¶ 27. The principal balance of Plaintiff's mortgage grew from $798,750 to $881,521. *Id.* at ¶ 28. Defendant demanded that Plaintiff sign and return the documents immediately. *Id.* at ¶ 26. Plaintiff signed them under duress and out of fear that Defendant would foreclose on her home. *Id*.

Plaintiff requested information from Defendant years later. *Id*. at ¶ 30. By letters dated May 1, 2015, January 14, 2016, March 30, 2017, and April 9, 2018 Plaintiff requested information concerning her modified mortgage. *Id*. at Exs. 8-10, 11-15. Defendant did not provide an explanation for the increased principal balance, but informed Plaintiff that its Executive Office would review her concerns. *Id*. at Ex. 8-10. On September 15 and October 6, 2015, Defendant wrote Plaintiff informing her that it needed additional time to investigate her mortgage file and

---

[2] Plaintiff alleges that the modification process began in 2010 and took approximately two years, but Plaintiff also alleges that the modification was approved in 2013. *Id*. at ¶ 31. The Court applies the 2013 date to Plaintiff's claims.

respond to her requests for information. *Id*. The Executive Office requested over forty extensions to research the case. *Id*. at ¶ 30, Exs. 11-15.

In June 2018, after this lawsuit was filed, Defendant added a "Deferred Principal Balance" to her statement for the first time in the amount of $112,836.88. *Id*. at ¶ 33. Through the date of the TAC, Defendant intentionally impeded Plaintiff from online access to pay her monthly mortgage. *Id*. at ¶ 19. Plaintiff paid approximately $486,229 from September 2005 through June 2018, but her balance is still $82,771 more than the balance when she purchased the home. *Id*. at 1. Assuming a monthly mortgage payment of $4,881.54 and total payments of $486,229, Plaintiff made 99.6 monthly mortgage payments over the 153-month period from September 2005 through June 2018.

## II. Legal Standard

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well pleaded factual

allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

"*Pro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants). Although courts still have an obligation to interpret "a pro se complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

### III. Analysis

#### A. CUTPA Claims

Plaintiff alleges that Defendant violated CUTPA in the following three ways: (1) falsely claiming that it conducted seventeen home inspections, (2) intentionally delaying Plaintiff's mortgage modification process, and (3) intentionally refusing to respond to her request for information about her mortgage. She also alleges she signed the mortgage modification documents under duress and a threat that foreclosure would be reinstituted. Defendant argues that these claims must be dismissed because they are time barred. An action for damages under CUTPA "may not be brought more than three years after the occurrence of a violation of

6

[CUTPA]." *See* Conn. Gen. Stat. § 42-110g(f). "The statute of limitations is an affirmative defense, and therefore generally not appropriate for a motion to dismiss." *See Bartold v. Wells Fargo Bank, N.A.*, No. 14-CV-865 (VAB), 2015 WL 7458504, at *4 (D. Conn. Nov. 24, 2015) (internal citations and quotation marks omitted); *see also Estate of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 203 (D. Conn. 2007). To meet its burden to prove the affirmative defense of statute of limitations, a defendant usually must wait for further fact development. *See Bartold*, 2015 WL 7458504, at *4. However, if the dates on the face of the complaint clearly show that a claim is time barred, a defendant may raise a statute of limitations defense in a pre-answer motion to dismiss. *Id.*

Here, it is clear on the face of the TAC that Plaintiff's first CUTPA claim, based on Defendant's misrepresentation about the number of home inspections it conducted, is time barred. Plaintiff alleges that she confronted Defendant about its misrepresentation in 2010 and Defendant apologized and offered her a nuisance settlement. [Dkt. No. 34 at ¶ 18]. Defendant's alleged misrepresentation took place seven years before Plaintiff filed this action. Therefore, due to the three-year statutory period imposed by Conn. Gen. Stat. § 42-110g(f), Plaintiff's CUTPA claim relating to seventeen home inspections is time barred and Defendant's Motion to Dismiss is GRANTED as to this claim.

Plaintiff's second CUTPA claim is based on Defendant's intentional delay of the modification process by changing the terms of the modification, refusing to accept trial payments, initiating foreclosure, and claiming that Plaintiff's application was missing certain documents and requiring her to submit a new

7

application.  *Id.* at ¶¶ 24-25.  Defendant's conduct ended when it offered Plaintiff a modification agreement and she accepted in 2013.  Because Plaintiff failed to file this action within three years of the termination of Defendant's conduct, her CUTPA claim based on Defendant's delay in processing her modification application is also time barred and Defendant's Motion to Dismiss is GRANTED as to this claim.

Plaintiff argues that the statute of limitations should be tolled under the continuing course of conduct doctrine because Defendant impeded her ability to make online payments in retaliation for filing this action.  The Connecticut Supreme Court has recognized that "under certain circumstances, the limitations period may be tolled under the continuing course of conduct doctrine." *See Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 177 (D. Conn. 2000).  A continuing course of conduct will toll the statute of limitations if the defendant "(1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." *Evanston Ins. Co. v. William Kramer & Assocs., LLC*, 890 F.3d 40, 45 (2d Cir. 2018) (citing *Flannery v. Singer Asset Fin. Co.*, 312 Conn. 286 (Conn. 2014) (internal citations and quotation marks omitted)).  Plaintiff does not allege she had a right to make and Defendant had a duty to accept online payments.  Nor does Plaintiff allege she was unable to or harmed by having to pay by mail or in person and was thus deprived of the ability to pay her mortgage.

In addition, Plaintiff fails to allege any continuing duty owed by Defendant that relates to the initial wrongs.  Defendant's interference with Plaintiff's ability to make online payments in retaliation for filing this action in 2017 is not related to its

8

misrepresentation in 2010 that it conducted seventeen home inspections or its delay in processing Plaintiff's modification application which it eventually accepted in 2013. Therefore, the statute of limitations for Plaintiff's CUTPA claims regarding Defendant's misrepresentations about the number of home inspections it conducted and its delay in processing her modification application cannot be tolled.

Finally, the Court construes Plaintiff's TAC to allege a third CUTPA claim based on Defendant's intentional delay in responding to her request for information about her mortgage and its request over forty extensions to research her request. Plaintiff alleges that she requested information about her mortgage in 2015, but Defendant intentionally and in bad faith delayed responding to her request.[3] CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *See* Conn. Gen. Stat. § 42-110b. CUTPA is "remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit." *Fink v. Golenbock*, 238 Conn. 183, 213 (1996) (internal citations and quotation marks omitted); *see also* Conn. Gen. Stat. § 42-110g(a). A CUTPA claim may be brought by "[a]ny person who suffers any ascertainable loss of money or property." *See* Conn. Gen. Stat. § 42-110g(a). "To prevail on a CUTPA claim, the plaintiffs must prove that (1) the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce . . . [and] (2) [they have] suffered an ascertainable loss of money or property as a result of the defendant's acts or practices." *Artie's Auto Body, Inc.*

---

[3] Plaintiff's CUTPA claim on this theory is not time barred on the face of the TAC.

9

*v. Hartford Fire Ins. Co.,* 287 Conn. 208, 217 (2008) (internal citations and quotation marks omitted).

Plaintiff states a CUTPA claim based on Defendant's intentional failure to provide her with information about her mortgage to the extent it impedes her ability to make full and timely mortgage payments which otherwise increased the amount due under her mortgage. First, Plaintiff sufficiently alleged that Defendant engaged in a deceptive practice by intentionally delaying its response to her information request. Second, she has adequately alleged an ascertainable loss flowing from Defendant's delay in responding to her request for information. Ascertainable loss "is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief . . . Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation." *Id.* at 217-18 (internal citations and quotation marks omitted). "An ascertainable loss is a loss that is capable of being discovered, observed or established. The term loss . . . has been held synonymous with deprivation, detriment and injury. To establish an ascertainable loss, a plaintiff is not required to prove actual damages of a specific dollar amount." *Id.* at 218. (internal citations and quotation marks omitted). However, the loss must still be "measurable even though the precise amount of the loss is not known." *Id.* (internal citation and quotation marks omitted).

Here, Plaintiff alleges she suffered an ascertainable loss equal to the increase in the principal balance and interest which accrued on her mortgage during the period Defendant delayed approval of her mortgage modification and

refused to accept her mortgage payments. Although Plaintiff had use and the ability to invest the mortgage payments she was unable to make, she has ostensibly alleged an ascertainable loss flowing from Defendant's delay in investigating her request for more information about her mortgage. *See Reader v. Cassarino*, 51 Conn. App. 292, 299 (1998) (To recover damages under CUTPA a plaintiff must "present evidence providing the court with a basis for a reasonable estimate of the damages suffered[, but this] does not necessitate that the actual amount of ascertainable loss be proven."); *see also Madonna v. Acad. Collection Serv. , Inc.*, No. 95-CV-875, 1997 WL 530101, at *11 (D. Conn. Aug. 12, 1997) ("Under CUTPA, the private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute.") (internal citation and quotation marks omitted).

As explained above, Plaintiff fails to state a CUTPA claim based on Defendant's misrepresentations about the number of home inspections it conducted and its delay in processing her modification application because these claims are time barred on the face of the TAC and therefore, Defendant's Motion to Dismiss is GRANTED as to these claims. Plaintiff states a CUTPA claim based on Defendant's intentional failure to provide her with information about her mortgage and Defendant's Motion to Dismiss is DENIED as to this claim.

### B. Breach of Contract Claims

Plaintiff's breach of contract claim is not entirely clear, but construing it liberally, the Court finds that Plaintiff alleged breach of contract claims based on the following two theories: (1) Defendant breached its obligation to accept

payments under the Trial Mortgage and (2) Defendant failed to credit payments made towards the mortgage. [Dkt. 34 at 1]. "The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Claude v. Wells Fargo Home Mortg.*, No. 3:13-CV-00535 (VLB), 2014 WL 4073215, at *23 (D. Conn. Aug. 14, 2014) (quoting *Meyers v. Livingston, Adler, Pulda, Meiklejohn and Kelly, P.C.*, 311 Conn. 282 (2014)).

With regard to the first theory, Plaintiff alleges that she formed an agreement with Defendant to enter a Trial Mortgage and that she performed under that agreement by making the first payment. Defendant purportedly breached the Trial Mortgage by failing to accept Plaintiff's second payment. Plaintiff alleges she was damaged by the increase in the principal balance of her mortgage. Even though Plaintiff states a claim on this theory, it is barred by the statute of limitations. Plaintiff pleads that the Trial Mortgage was sent in July 2010 and Defendant denied her second payment. [Dkt. 34 at ¶ 16]. The statute of limitations on a breach of contract action is six years and Plaintiff failed to bring her claim within the limitations period. *See* Conn. Gen. Stat. § 52-576. Defendant's Motion to Dismiss is GRANTED as to this claim.

As to the second theory, Plaintiff alleged that Defendant's misconduct continued until approximately 2013 when Defendant failed to properly process her mortgage application, including its failure to credit payments Plaintiff made on her mortgage. Plaintiff sufficiently alleges that the parties had a mortgage, Plaintiff made payments to the mortgage and Defendant breached the agreement by failing

to accept them. Plaintiff alleges damages in the amount of uncredited payments. Her breach of contract claim on this theory is not time-barred. *See* Conn. Gen. Stat. § 52-576. Therefore, Plaintiff states a claim for breach of contract based on Defendant's failure to properly process her mortgage application and credit her payments and Defendant's Motion to Dismiss is DENIED as to this claim.

The TAC also includes allegations which can reasonably be construed as a breach of the covenant of good faith and fair dealing. "[T]he duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship." *Caires v. JPMorgan Chase Bank, N.A.*, 880 F. Supp. 2d 288, 307 (D. Conn. 2012) (quoting *Rafalko v. Univ. of New Haven*, 129 Conn. App. 44, 51 (2011)). "To constitute a breach of [the implied covenant], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *Kollar v. Allstate Ins. Co.*, No. 3:16-CV-01927, 2017 WL 3222535, *5 (D. Conn. July 28, 2017) (internal citations and quotation marks omitted). "Bad faith requires fraud, a 'design to mislead or deceive another,' or 'a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's duties, but by some interested or sinister motive.'" *Id.* (quoting *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2004)).

Here, Plaintiff alleges that Defendant continually and intentionally impeded Plaintiff's ability to timely modify the mortgage and deceitfully added a Deferred Principal Balance of $112,836.88 to her account in June 2018. She claims that Defendant purposefully notified her that her application was incomplete and

instructed her to resubmit her application despite the fact that it knew, or in the exercise of due diligence would have known, her application was complete. By claiming Defendant intentionally and unjustifiably delayed approval of her mortgage modification, Plaintiff has sufficiently alleged Defendant acted in bad faith in violation of the covenant of good faith and fair dealing, and therefore Defendant's Motion to Dismiss is DENIED as to this claim.

Plaintiff also alleges that Defendant deceitfully added a Deferred Principal Balance of $112,836.88 to her account in June 2018. Plaintiff has sufficiently alleged that Defendant interfered with certain benefits entitled to her under a contract. Although Plaintiff does not allege that she reasonably expected that the Deferred Principal Balance would not be charged to her account, the average consumer lacks the financial acumen and perhaps the sophistication and discipline to hedge the risk of such a delay in the ability to pay his or her mortgage. Coupled with the claim that Defendant's motivation was to foreclose on Plaintiff's home, she has alleged a breach of the covenant of good faith and fair dealing.

For the above reasons, Plaintiff states a claim for breach of contract on the theory that Defendant failed to properly process her mortgage application, including its failure to credit payments Plaintiff made on her mortgage. Plaintiff also states a claim for breach of the covenant of good faith and fair dealing on the following grounds: Defendant continually and intentionally impeded Plaintiff's ability to timely modify the mortgage and deceitfully added a Deferred Principal Balance of $112,836.88 to her account in June 2018. Defendant's Motion to Dismiss is DENIED as to these claims.

### C. Emotional Distress Claims

Plaintiff alleges claims for intentional and negligent infliction of emotional distress. To establish a claim for intentional infliction of emotional distress, a plaintiff must satisfy four elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." *Minder v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000) (quoting *Petyan v. Ellis*, 200 Conn. 243, 253 (1986)). The conduct must be "so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause and does cause, mental distress of a very kind." *Id*. The distress it induces must be "so severe that no reasonable person could be expected to endure it." *Craig v. Yale Univ. Sch. of Med.*, 838 F. Supp. 2d 4, 12 (D. Conn. 2011) (internal citations and quotation marks omitted).

Here, Plaintiff claims she submitted multiple modification applications over the course of two years only for Defendant to claim that information was missing and to force her to start the process from the beginning again. Plaintiff claims that Defendant intentionally delayed the modification process because it knew that interest and payments would accrue towards the principal balance and that it might be able to foreclose Plaintiff's property and generate a profit. Taking Plaintiff's allegations as true, this conduct is extreme and outrageous. A person's home is

her sanctuary and is often her largest asset. Intentionally causing a person to fear losing this type of asset and to incur unnecessary expenses on it is extreme and outrageous. Lastly, Plaintiff sufficiently alleges that her distress was severe. Plaintiff claims that she suffered from emotional and physical pain and suffering, sleepless nights and stress almost to the point of a nervous breakdown during the modification process which lasted two years. [Dkt. No. 34 at ¶¶ 12-13]. Plaintiff also alleges that it was stressful dealing with Defendant's contrived foreclosure. *Id.* at ¶ 24. These allegations are sufficient to establish severe distress. *See Craig*, 838 F. Supp. 2d at 12-13 (holding that the following factual allegations were sufficient to withstand a motion to dismiss: trauma; sleeplessness; loss of appetite; substantial loss of employment income; overly burdensome financial hardships; damage to his relationship with his family and friends; and damage to his self-esteem and sense of self-worth). Therefore, Plaintiff states a claim for intentional infliction of emotional distress and Defendant's Motion to Dismiss is DENIED as to this claim.

Plaintiff also alleges a claim for negligent infliction of emotional distress. To establish a claim for negligent infliction of emotional distress, a plaintiff must satisfy four elements: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 273 (D. Conn. 2017) (quoting *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003)). The Court

finds *Drena v. Bank of America, N.A.* instructive. No. 3:15-CV-00176 (MPS), 2016 WL 730699 (D. Conn. Feb. 23, 2016). Plaintiff alleged that Bank of America "improperly debited payments from his bank account, represented to him that it would promptly work with him to avoid foreclosure but instead delayed a loan modification application, did not process the documents that it repeatedly requested, and initiated a foreclosure action." *Id*. at *6. The Court found that plaintiff stated a claim because "it is foreseeable that taking unauthorized funds from a mortgagor who already is struggling to pay his mortgage, and then stringing along the mortgagor for years by repeatedly requesting and repeatedly ignoring the mortgagor's loan-modification paperwork would be severely distressing to a mortgagor in financial straits striving to stay in his home." *Id*.

Similar reasoning applies here. Plaintiff alleges that Defendant intentionally delayed the modification process so that her account would accrue more fees and interest. Plaintiff also claims that the delays resulted in a "contrived" foreclosure proceeding. Plaintiff sought a modification to take advantage of lower interest rates and it is foreseeable that intentionally increasing the balance of her account would cause her severe distress. For the foregoing reasons, Plaintiff states a claim for negligent infliction of emotional distress and Defendant's Motion to Dismiss is DENIED as to this claim.

Defendant argues that Plaintiff's emotional distress claims are preempted by Connecticut contract law which does not allow recovery for emotional distress damages unless contemplated by the contract. The Court disagrees. Plaintiff's emotional distress claims are not based on her contractual relationship with

Defendant. They are based on Defendant's conduct when Plaintiff attempted to negotiate a new contractual relationship in the form of a mortgage modification. Therefore, Plaintiff's claims are not preempted by Connecticut contract law.

## IV. Conclusion

Plaintiff's CUPTA, breach of contract and emotional distress claims survive. First, Plaintiff states a CUTPA claim based on Defendant's intentional failure to provide her with information about her mortgage to the extent it impedes her ability to make full and timely mortgage payments which otherwise increased the amount due under her mortgage. Second, Plaintiff states a breach of contract claim based on the theory that Defendant failed to properly process her mortgage application, including its failure to credit payments Plaintiff made on her mortgage; and claims for breach of the covenant of good faith and fair dealing on the grounds that Defendant intentionally impeded Plaintiff's ability to timely modify the mortgage and deceitfully added a Deferred Principal Balance of $112,836.88 to her account in June 2018. Lastly, Plaintiff states claims for intentional and negligent infliction of emotional distress. For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

/s/
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: March 28, 2019.**